# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

XHAN NGUYEN,

               Plaintiff,

    v.

MICHAEL J. ASTRUE,
COMMISSIONER,

      Commissioner of Social Security
      Administration,

              Defendant.

CIVIL ACTION

No. 06-3343

Pollak, J.                                                        January 23, 2008

## OPINION

The final decision of the Commissioner of Social Security ("Commissioner")

denying plaintiff Xhan Nguyen's claim for supplemental security income ("SSI") under

Title XVI of the Social Security Act was presented to this court on cross-motions for

summary judgment.  I referred this case to United States Magistrate Judge Arnold C.

Rapoport for a report and recommendation ("R&R").  On October 24, 2007, Magistrate

Judge Rapoport  issued an R&R recommending that the defendant's motion for summary

judgment be granted, the plaintiff's motion denied, and the final decision of the

Commissioner denying benefits affirmed.  No objections have been filed.  I have

reviewed the record pursuant to 28 U.S.C. § 636(b)(1) and *Henderson v. Carlson*,

812 F.2d 874, 878 (3d Cir. 1987), and, for the reasons below, I will adopt the Report and

Recommendation as to Parts I - III, but I will not adopt Part IV,[1] and I will remand this

matter to the Commissioner for further review.

## Background

I adopt the Report and Recommendation as to its exposition of the procedural

history and factual setting of the case (Parts I and II), and as to its statement of the legal

standard for reviewing the determinations of the Administrative Law Judge ("ALJ")

(Part III).  I also agree with the R&R's determination that the ALJ, in denying Nguyen's

claim, "failed to fully credit the opinion of [Nguyen's] treating psychiatrist."[2]  R&R 14.

However, I cannot endorse the R&R's conclusion that it was within the ALJ's authority to

discount the opinions of Mr. Nguyen's treating psychiatrist, Dr. Magundayao.

To clarify my point of departure with the R&R, it is necessary to recount the

portions of Dr. Magundayao's submissions that I find particularly relevant.  After Dr.

Magundayao's February 17, 2005 meeting with Mr. Nguyen, she diagnosed him along five

---

[1] The R&R is organized into Parts I, II, III, and a discussion section labeled Part "V."  The court refers to this discussion section as Part IV of the R&R.

[2] The R&R is correct to treat the ALJ, in concluding that Mr. Nguyen's depression did not rise to a level of severity entitling him to supplemental benefits, as rejecting, rather than merely discounting, Dr. Magundayao's submissions.  *See* R&R 9-10 (finding that two of the ALJ's bases for failing to credit Dr. Magundayao's submissions were unacceptable because they did not constitute "contrary" medical evidence).  However, even if the ALJ's opinion is interpreted as merely "discounting" Dr. Magundayao's submissions, the ALJ's grounds for doing so are invalid for the reasons addressed in this memorandum, and remand is therefore appropriate.

axes using clinical terminology whose meaning the court need not speculate upon.

R. 128.  Dr. Magundayao then offered the following "diagnostic impressions and

evaluation summary":

> Xhan Nguyen is a 50 year old married Vietnamese male who is coming to
> treatment for depression, anxiety, poor memory, nightmares and flashbacks,
> social withdrawal, severe headaches, agitation, low energy, and insomnia.  He
> has never been in treatment despite chronic symptoms. . . .  His mood was
> anxious and depressed.  His affect was blunted.  He had poor eye contact
> throughout the interview.  He was cooperative in answering questions with the
> help of his therapist.  He is able to understand and speak very little English and
> relies mostly on his daughters to help him.  Xhan's strengths include some
> family support from his wife and children and a willingness to come to
> treatment and take medication. . . .  He has minimal social support.  His
> stressors include chronic symptoms, acculturation problems and difficulty
> handling social situations.  Xhan reports normal development.  He is having
> difficulty assimilating into American culture due to his symptoms and the
> language barrier. . . .  Xhan will come to weekly therapy sessions.  He will
> work on treatment goals of reducing the severity of symptoms through
> treatment and medication compliance while developing supports.

R. 129.  Dr. Magundayao also, in February 2005, recounted Mr. Nguyen's "bio-psycho-

social formulation" in a detailed, six-paragraph report.  The report states that "Mr.

Nguyen presents with the following symptoms: anxiety, depression, social isolation,

withdrawal and poor sleep pattern."  R. 131.  According to the report, as a conscript in the

Vietnamese Army:

> [Mr. Nguyen] saw some of his friend [sic] die and others lose part of their
> bodies.  These images have been on his mind and continue to stay with him.
>      . . . During his time in a Communist prison, Mr. Nguyen was tortured
> day and night — with no food or water.  The constant abuse by the prison
> guards has traumatized him.  The five year prison term has crippled this soldier
> mentally, emotionally and physically.
>      . . .

Mr. Nguyen was traumatized by one incident after another.  He is suffering from a lack of sleep, with severe headaches, memory loss, loss of appetite, nightmares and flashbacks.  He is also suffering with an ulcer, blood cholesterol, and a lump in his throat.

R. 131.

After Dr. Magundayao's October 15, 2005 meeting with Mr. Nguyen, the

psychiatrist made a detailed "Medical Assessment of Ability to Do Work-Related

Activities (Mental)."  R. 134-37.  In this assessment, Dr. Magundayao reported that:

[Mr. Nguyen] is limited in ability to follow rules due to memory loss, short attention span due to nerve/emotional damage, aware of time but not able to keep focus on how much time has passed, needs supervision but still may get frustrated or experience flashbacks mid-stream, will be easily distracted by emotional triggers of past experiences of torture and abuse by authority figures, is unable to form questions about tasks due to limited ability to describe feeling or to form/speak thoughts in a comprehensible fashion, not trusting of the public so unable to serve them as customers in any capacity at this time, and also unable to interact with any success as [sic] co-workers due to secondary paranoia and trust issues.  With long-term therapy some improvement may occur, but this person is not able to function normally at this point in time.

R. 135.  The psychiatrist also elaborated upon the nature and consequences of Mr.

Nguyen's "nightmares and flashbacks":

Patient is limited by the symptoms of post-traumatic depression, most especially nightmares and flashbacks which cause him to be very limited in his abilities to focus and concentrate on the task at hand and also make it difficult for him to understand and follow directions given.  Patient's flashbacks are unpredictable in sequence and duration so he is unable to predict or control what he will be able to do; therapy and medication are needed in order to have any hope of eventually helping him to function with any degree of normalcy.  He is not capable of normal functioning at this time.

R. 136.

## Duty to Consider Treating Psychiatrist's Submissions

In considering a disability claim, the ALJ is required to "consider all the evidence and give some reason for discounting the evidence he rejects." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). This duty is heightened with respect to the submissions of a claimant's treating psychiatrist. "A cardinal principle . . . is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Moreover, "a treating physician's report not only may be given more weight, it must be given controlling weight, if so supported." *Rieder v. Apfel*, 115 F. Supp. 2d 496, 501 (M.D. Pa. 2000) (discussing 20 C.F.R. § 404.1527).

If the ALJ elects to reject a treating psychiatrist's opinion, it may not do so "'for no reason or for the wrong reason,'" *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)), and "is not free to employ her own expertise against that of a physician who presents competent medical evidence." *Id.* (addressing "treating physicians' reports"). The ALJ may reject a treating psychiatrist's opinion "only on the basis of contradictory medical evidence, but may afford [the] opinion more or less weight depending upon the extent to which supporting explanations are provided." *Id*. The ALJ may not, however, reject the opinion "due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317.

**Discussion**

The R&R correctly recognized that two of the ALJ's bases for rejecting Dr. Magundayao's submissions were invalid.  In discrediting Dr. Magundayao's opinions as to the severity of Mr. Nyugen's disability and his inability to work, the ALJ "based his opinion on the facts that . . . Nguyen did not allege[] any symptoms in his Social Security paperwork [and] did not tell Dr. Tran he was experiencing emotional problems after March 2004."  R&R 9.   These "facts," as the R&R recognized, are entitled to "no weight . . . because  neither are based on 'contrary medical evidence.'  Moreover, Nguyen's failure to discuss his emotional problems with his family physician cannot negate the opinion of his treating psychiatrist, the specialist Nguyen consulted for his specific problem."  *Id.*  Furthermore, as the R&R makes clear, Mr. Nguyen had not yet been treated by Dr. Magundayao when he filed his application for disability benefits on October 14, 2004.

I disagree, however, with the R&R's conclusion that the ALJ was permitted to reject Dr. Magundayao's submissions on two other bases, which the R&R describes as (1) the fact that Mr. Nguyen "told Dr. Magundayao on October 15, 2005 that he was doing okay on the medication and was less depressed" and that (2) the ALJ "cited the fact that Dr. Magundayao's report was completely unsubstantiated by any contemporaneous clinical notes or testing. . . ."  *Id*.  The R&R's further determinations were contingent upon this conclusion, and therefore I will not adopt Part IV of the R&R.

-6-

**1.**

One of the bases for rejecting Dr. Magundayao's submissions that the R&R found acceptable — that Mr. Nguyen "told Dr. Magundayao on October 15, 2005 that he was doing okay on the medication and was less depressed," *id.* — does not expressly contradict Dr. Magundayao's opinion and substitutes the ALJ's clinical judgment for that of the treating psychiatrist. With respect to this finding, the R&R refers to a statement recorded in a "Medication Log Sheet" signed by Dr. Magundayao. R. 138. The log sheet indeed includes the handwritten notes: "Xhan doing okay on current meds," "mood [is] less depressed," and "sleeping okay." R. 138. At the same time, the log sheet marks "no change" in the box adjacent to "impressions since last visit." *Id.*

Dr. Magundayao's clinical notes do not contradict her ultimate opinions. Certainly, one could speculate that, in both February and October 2005, Dr. Magundayao exaggerated or mis-diagnosed the severity of Mr. Nguyen's depression. However, "an ALJ may not make speculative inferences from medical reports," and "is not free to employ her own expertise against that of a physician who presents competent medical evidence." *Plummer*, 186 F.3d at 429. Moreover, one could also infer that Nguyen was "less depressed" in October 2005 than in February 2005, yet still suffering from debilitating depression that had not significantly improved. Therefore, the ALJ did not identify a contradiction between Dr. Magundayao's notes and her opinion, but instead "set [the ALJ's] own expertise against that of a physician who presents competent evidence." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (1985). The ALJ's interpretation of

Dr. Magundayao's clinical notes was therefore impermissible.

**2.**

The other basis for rejecting Dr. Magundayao's submissions that the R&R found acceptable — "the fact that Magundayao's [October 2005] report was completely unsubstantiated by any contemporaneous clinical notes or testing," R&R 9 — is belied by the record. "Medical evidence must be sufficiently complete and detailed as to symptoms, signs, and laboratory findings to permit an independent determination." 20 C.F.R. Pt. 404 Subpt. P. App. 1. Dr. Magundayao's October 2005 opinion as to Mr. Nguyen's ability to perform work includes detailed clinical observations of symptoms and signs that supports her conclusions. R. 134-37. For example, Dr. Magundayao reports that Mr. Nguyen "may not be able to trust supervisors "due to past experiences of torture and abuse by authority figures" and that he may be "unable to interact with any success" with colleagues "due to secondary paranoia and trust issues." R. 137. Moreover, the report is accompanied in the record by the contemporaneous medication log sheet addressed above, which includes a "Progress Note." R. 138. I thus conclude that the ALJ had no basis for rejecting Dr. Magundayao's medical opinion as to Mr. Nguyen's disability, and erred in relying on other evidence in the record to determine that Mr. Nguyen's depression was not severe.

**3.**

If the ALJ found Dr. Magundayao's opinion too ill-supported to be credible, he was obliged to develop the record with respect to her submissions in order to determine

whether Mr. Nguyen required supplemental social security benefits.  The ALJ, in

considering the submissions of a claimant's treating psychiatrist, has a limited duty to

develop the record if he finds those submissions, in certain respects, inadequate to support

the conclusions the psychiatrist makes.  *See Ferguson*, 765 F.2d at 36 ("[I]f the ALJ

believed [a claimant's medical] evidence was inconclusive or unclear, it was incumbent

upon him to secure whatever evidence he needed to make a sound determination.").

Pursuant to 20 C.F.R. § 404.1512(e)(1), the ALJ must "seek additional evidence or

clarification from [a claimant's] medical source when the report from [the] medical

source contains a conflict or ambiguity that must be resolved, the report does not contain

all the necessary information, or does not appear to be based on medically acceptable

clinical and laboratory diagnostic techniques."  This specific regulation is an instance of

the ALJ's broader "duty to develop a full and fair record in social security cases."

*Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995).  This duty is "heightened" when

plaintiff is without counsel, *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979),

but still exists when plaintiff is represented.  *See Ventura*, 55 F.3d at 902 (concluding, in

a case where the claimant was represented by counsel but the ALJ was biased, that the

ALJ's duty to develop the record stems from the non-adversarial nature of social security

hearings and the "beneficent purposes" of the Social Security Act).[3]  Thus, while the

_____

[3] *See also Ferguson*, 765 F.3d at 36 n.4 (concluding from the legislative history of
Title XVI that the vulnerable nature of supplemental benefits claimants imposes a special
duty on the Commissioner to develop the record with respect to medical evidence);
*Schwartz v. Halter*, 134 F. Supp. 2d 640, 656 (E.D. Pa. 2001) (holding that the ALJ's

claimant bears the burden of providing evidence that the Commissioner "can use to reach conclusions about [the claimant's] medical impairment(s)," 20 C.F.R. § 416.912(a), circumstances may arise where the ALJ, when presented with such evidence, may be compelled to develop the record in order to corroborate or discredit the claimant's submissions. An "essential inquiry" for determining when this duty arises "is whether the incomplete record reveals evidentiary gaps which result in prejudice to the claimant." *Gauthney v. Shalala*, 890 F. Supp. 401, 410 (E.D. Pa. 1995).

In light of this duty, two determinations compel the conclusion that the ALJ's duty to develop the record was triggered in this case. First, through the detailed submissions of Dr. Magundayao, Mr. Nguyen met his burden of providing the Commissioner with evidence. Dr. Magundayao's reports are sufficiently well-supported to serve as reliable evidence that Mr. Nguyen suffers from severe depression. Though Mr. Nguyen has been ably represented throughout this process, his counsel could not have anticipated that the ALJ would rely upon a few handwritten notes in the medication logs sheet to discredit the bulk of Dr. Magundayao's observations. The administrative hearing transcript, though revealing that the ALJ acted respectfully and professionally throughout the hearing, provides no indication that the ALJ was skeptical of Dr. Magundayao's

---

duty to develop the record "exists even when the claimant is represented by counsel because an administrative hearing is not an adversarial proceeding . . . "); *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) (holding that "the duty to develop the record fully and fairly" exists "'even if . . . the claimant is represented by counsel'" (quoting *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (internal quotation omitted)).

submissions.  Moreover, there appears to be no "contradictory medical evidence" in the

record that the ALJ could have relied on to discount the credibility of Dr. Magundayao's

submissions.  Consequently, Mr. Nguyen's counsel satisfied his obligation to present

compelling evidence in support of his client's claim, and appears to have had no notice

that it would be prudent to obtain testimony from Dr. Magundayao or to provide

additional corroborating evidence of Mr. Nguyen's depression.

Second, the ALJ's reliance on an incomplete record resulted in prejudice to Mr.

Nguyen.  Under the five-step process that the Commissioner uses to evaluate a claim of

disability, *see* 20 C.F.R. § 404.1520 (b)-(f), if a claimant is found to suffer from an

impairment equal to that specified in 40 C.F.R. Part 404, Subpart P, Appendix 1 that "has

lasted or is expected to last continually for at least twelve months," *Shaudeck v. Comm'r*

*of Social Sec. Admin*, 181 F.3d 429, 431 (3d Cir. 1999), the ALJ will find that he is

disabled without proceeding through the subsequent steps.  Furthermore, in determining

whether such an impairment exists, the Commissioner must give "controlling weight" to

the medical opinion of a treating professional "on the issues of the nature and severity of

[a claimant's] impairment" if the opinion "is well supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in the record."  20 C.F.R. § 416.927(d)(2).  Dr. Magundayao's

February and October 2005 reports are based on clinical observations as to the severity of

Mr. Nguyen's depression.  The ALJ did not identify substantial evidence in the record

that could discount Dr. Magundayao's testimony.  *See Faragnoli v. Massanari*,

247 F.3d 34, 41-42 (3d Cir. 2001) (holding that medical evidence not expressly

considered by the ALJ cannot be the basis for determining that the ALJ's determinations

were supported by substantial evidence).  Dr. Magundayao's submissions could thus be

dispositive of whether Mr. Nguyen should receive supplemental benefits, depending on

how well-supported they are deemed by an ALJ evaluating them under the appropriate

standard.

Even if the ALJ ultimately determined that Dr. Magundayao's submissions should

not be given controlling weight, he was obligated to consider the submissions in

determining Mr. Nguyen's residual functional capacity ("RFC") to perform work.[4]

Pursuant to 20 C.F.R. § 416.945(a)(3), the Commissioner is obligated to consider and

sometimes to seek medical evidence relevant to a claimant's RFC:

> We will assess your residual functional capacity based on all of the relevant
> medical and other evidence.  In general, you are responsible for providing the
> evidence we will use to make a finding about your residual functional capacity.
> However, before we make a determination that you are not disabled, we are
> responsible for developing your complete medical history, . . . making every
> reasonable effort to help you get medical reports from your own medical sources.

---

[4] The ALJ did not expressly reject Dr. Magundayao's opinion on this matter, but stated that, because the opinion "is not bolstered by any contemporaneous clinical notes or testing, . . . [he] will not give it much weight."  R. 18.  In going on to evaluate the factors relevant to Mr. Nguyen's RFC, the ALJ did not again mention Dr. Magundayao's opinion.  From this I conclude that the ALJ did not simply "afford . . . [the] opinion more or less weight depending upon the extent to which supporting explanations are provided," *Plummer*, 186 F.3d at 429, but in fact declined to give it any real consideration.  The R&R is thus correct in stating that the ALJ "failed to credit Dr. Magundayao's opinions on Nguyen's limitations."  R&R 9.

Dr. Magundayao's submissions are not contradicted by medical evidence in the record, and the reasons the ALJ offered for "not giving them much weight," R. 18, were invalid. The ALJ was thus obligated to consider the submissions in evaluating Mr. Nguyen's RFC and, if the ALJ did not believe they were complete, to attempt to develop the record as necessary to determine whether Mr. Nguyen's depression impaired his RFC.

## Conclusion

The ALJ rejected Dr. Magundayao's submissions based on inappropriate reasons, and did not adequately consider Dr. Magundayao's opinions in evaluating the severity of Mr. Nguyen's depression or the extent of his RFC.  Therefore, I find that the ALJ's determinations were not based on substantial evidence, and that the ALJ failed to fully develop the record on Mr. Nguyen's claim.  For these reasons, I disagree with the R&R's recommendation that summary judgment in the Commissioner's favor is warranted.  I recognize, however, that if the record cannot be further developed, there may be some basis for discounting the weight of Dr. Magundayao's submissions.[5]  Accordingly, I will not enter judgment in claimant's favor, but will instead remand the case for further review.  On remand, the ALJ may, in light of this analysis, accept Dr. Magundayao's conclusion that Mr. Nguyen is as severely impaired as her reports indicate, or the ALJ

---

[5] I agree with the R&R's conclusion that Dr. Magundayao's clinical notes from December 2005, January-March 2006, and May 2006 "cannot be read to support the extreme limitations Dr. Magundayao included in her October 15, 2005 report."  R&R 13-14.  Nor, however, for the reasons above, may the clinical notes be interpreted by the ALJ to contradict Dr. Magundayao's October 2005 diagnosis.

may conclude that the proper course is to develop the record in order to place the merits of Mr. Nguyen's claim in sharper focus.  An appropriate order and, because the court remands pursuant to sentence four of 42 U.S.C. § 405(g),[6] *see Kadelski v. Sullivan*, 30 F.3d 399, 402 (3d Cir. 1994), a separate judgment accompany this opinion.

---

[6] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g)